NOTE.—S. P. Beecher v. Barber, 6 Dem., 129.

NEW YORK COUNTY.—HON. RASTUS S. RANSOM, SURROGATE.—December, 1888.

MATTER OF FITHIAN.*

*In the matter of the judicial settlement of the account of MARY J. CLARK as executrix of the will of LEMUEL B. CLARK, deceased executor of the will of FREEMAN J. FITHIAN, deceased.*

Where a citation is issued upon the petition of one interested in the estate of a decedent, *i. e.* his widow, asking that an executrix of a deceased executor of decedent's estate show cause why she should not "render and settle an account" of the proceedings of the deceased executor of the estate of the first decedent, the proceeding is not an intermediate accounting but is a final accounting, that is, a judicial settlement and distribution.

Where there is a conflict of evidence upon an issue of fact the referee's decision thereon will be sustained.

Upon the accounting of an executrix of a deceased executor it was conceded that certain moneys came into the hands of the deceased executor; it was claimed by his executrix that the said moneys so received were assets of a partnership between the deceased executor and his testator. It was alleged by the objector on the accounting that such moneys came into his hands as executor of his testator. *Held*, that the refusal of the executrix of the deceased executor after due notice, to produce the books and private papers of the deceased executor, did not raise the presumption that such books showed that the moneys were received by the deceased executor, as executor, and not as partner.

*For former proceedings in this estate, see Matter of Fithian, 44 *Hun* 457, affirming 5 *Dem.* 305, and also Estate of Fithian, 14 *Civ. Proc. Rep.* 52.

MATTER OF FITHIAN.

In such case the burden was still upon the objector to prove that the entries in the books of the deceased executor showed that the moneys were received by him as executor.

Where a proper voucher of payment is presented by the executor the burden of impeaching it is cast upon the objector.

ACCOUNTING of Mary J. Clark as executrix of the will of Lemuel B. Clark, deceased, of the proceedings of said Lemuel B. Clark, as executor of the will of Freeman J. Fithian, deceased.

The accounting of the executrix was had upon the petition of Harriet J. Fithian, the widow of Freeman J. Fithian, upon which an order to show cause was issued why the executrix should not render and settle an account of the proceedings of Lemuel B. Clark, the deceased executor of the will of Freeman J. Fithian, deceased.

The facts are stated in the opinion of the Surrogate.

CORNELL, SECOR & PAGE, *for* HARRIET J. FITHIAN, *petitioner.*

GEORGE W. COTTERILL, *for* MARY J. CLARK, *executrix.*

THE SURROGATE.—Consideration of this case has been prevented by the volume of other business until this time. Quick decisions of all matters are very important to persons interested, but careful examination of such complex pleadings, and such a mass of evidence, such voluminous briefs of counsel and elaborate opinion of the referee, as we have in this case, compels the employment of considerable time.

The questions to be determined are not difficult of solution. The facts being ascertained, the law governing the rights of the parties is readily discovered and easily applied.

Certain facts upon which the rights of the persons interested depend will not be denied, to wit: The life and death of Messrs. Fithian and Clark; that they were lawyers, and for many years had been associated in the practice of the law in this city under the name and style of a partnership known to the public as Fithian & Clark; that the usual evidence of the existence of a copartnership between lawyers is found on inquiry from those of the public who had business transactions with them; also, evidence from the same class of persons that such apparent partnership was of a limited and qualified character as between the partners; that in many matters of business pursuant to mutual agreement, each of the members of the firm acted entirely for himself, although in some instances the particular matter was conducted in the firm name: the fact that Mr. Fithian died before Mr. Clark, and left a will appointing the latter his executor, and that he qualified and acted as such executor until his own death, is not to be disputed; also that he took possession of Fithian's estate as he claimed it to exist, and his private books and papers, and all memoranda, which would of themselves afford close, if not exact, information in regard to all his personal affairs, and also the character of his association with Clark generally, as well as particularly. The fact of Clark's death several months after Fithian's, and that his wife, the present accounting party, was left his executrix, has duly qualified, and has been and is acting as such executrix, cannot be disputed. It is also undeniable that Clark, as Fithian's executor, never filed an inventory nor rendered any account of his trust.

It is also true that this proceeding was instituted by the petition of Mrs. Fithian as the widow of Freeman J. Fithian; she does not appear in the inception of the proceeding as executrix of her husband's will, but later on she does appear in orders, &c., as sole legatee and executrix, and as such sole legatee and executrix she objects to the account.

The powers of this court to amend process and pleading is ample in proper cases.    Whether this is a proper case, I do not, of course, decide ; that question is not being considered.

It is a fact also, that upon Mrs. Fithian's petition as "widow" a citation was issued and duly served requiring Mrs. Clark, "executrix of the estate of Lemuel B. Clark deceased, who was the executor of the estate of Freeman J. Fithian, deceased . . . . . to show cause why you should not render and settle an account of the proceedings of Lemuel B. Clark as executor of the estate of Freeman J. Fithian, deceased." . . . . . .

The citation is the mandate of the court, and is the only foundation of the proceeding.    To it, and the statute, the respondent is bound to look for information and notice of the nature and scope of the proceeding, and his rights and those of all concerned depend entirely upon the terms of such information and notice. In this proceeding, then, we have Mrs. Fithian as "widow" that is as a person interested in the estate of Freeman J. Fithian, deceased, entitled in virtue of the citation to certain relief, to wit: That Mrs. Clark, as executrix of her husband, render and settle an account of his proceedings as the executor of Fithian.    The provision of the statute specially referring to a pro-

ceeding of this kind is found in Section 2606 of the Code of Civil Procedure.

As to the accounting by the executor, etc., of deceased executor to this section we must go to ascertain the jurisdiction of the Surrogate's Court.   It is as follows : " Where an executor dies the Surrogate's Court has the same jurisdiction upon the petition of his successor, or of a surviving executor, . . . . . or of creditors or a person interested in the estate, . . . . . to compel the executor . . . . . of the decedent to account, which it would have against the decedent if his letters had been revoked by a Surrogate's decree. . . . . . The Surrogate's Court has also jurisdiction to compel the executor . . . . . at any time to deliver over any of the trust property which has come to his possession or is under his control . . . . .   We see, therefore, that Mrs. Fithian, being a person interested in the estate of Fithian, had a right to invoke the aid of this court to the extent of its jurisdiction to compel Mrs. Clark to account as the executrix of her husband, who was the executor of Fithian, and the jurisdiction of the court is the same as it would have been in a proceeding against Clark, in case his letters had been revoked by the decree of this court.   Such a proceeding could never be held, I am confident, to be for an intermediate accounting, but, on the contrary, one for a final account, that is, for a judicial settlement and for distribution.   The scheme of the law for intermediate accountings obviously contemplates an investigation of the accounts of an executor, etc., in office, and the purpose is clearly set out in the statute, to wit : To enable the court to say whether debts or

legacies, etc., may be then paid. We shall be confirmed in our view that a proceeding under Section 2606 is not and cannot be other than for a judicial settlement by turning to Sections 2603, 2605 and the last paragraph of Section 2606, already quoted. Section 2603 provides for the effect of a decree revoking letters, viz.: "upon the entry of a decree as prescribed in this chapter, revoking letters issued by a Surrogate's Court to an executor . . . . . *his powers cease*" (the italics are mine.) Section 2605 provides . . . . . "The Surrogate's Court has the same jurisdiction, upon the petition of the successor . . . . . to compel the person whose letters have been revoked to account for or deliver over money or other property and to *settle his account* (the italics are mine), which it would have upon the petition of a creditor, or person interested in the estate, if the term of office conferred by the letters had expired by its own limitation."

The sole purpose of Section 2606 seems clearly to be to provide for ascertaining the condition of the estate of the deceased executor's decedent and the deceased executor's account of his proceedings thereon, and whether any trust property, and how much, has come to the hands of the accounting party, and compelling him to deliver it over.

I hold that this proceeding is not for an intermediate accounting of Mrs. Clark as the executrix of the deceased executor of Fithian; that the petition and citation are in proper form and have duly notified the respondent that she was required to judicially settle her account as the executrix of the deceased executor of Fithian; and that such account must show,

so far as she had obtained, or could obtain the facts, the amount of money and other property her testator had received and paid out as such executor; but also such amount of money or other property of her testator's decedent *as has come to her possession, or is under her control.* And as already shown, if any such trust property should be found to have come to her possession, or is under her control, she could be compelled to deliver it over.

We have now shown that this respondent had due notice of the nature of the account she was required to render and settle, and also the scope of the judicial inquiry and its legal sequence. It is important next to ascertain what questions of fact are in dispute between the petitioner and the respondent. Such questions, affirmed on the one side and denied on the other, constitute the issue of fact to be tried, and, in this proceeding, were sent to a referee to hear and determine, subject to the confirmation of his report by me.

The issues of fact in this proceeding as in all others of a like kind, are to be ascertained by an examination of the account rendered, and any objections thereto. There is no need of citing authority to sustain the ruling that no finding of fact or law should be sustained unless it is fairly within the issues raised in the way mentioned. The trial of the issues raised in this proceeding has developed a sharp conflict of evidence upon important questions, upon all of which the learned referee has devoted much patient labor, and in the main has justly disposed of all the questions referred to him.

The order of reference is entitled "In the matter of the judicial settlement of Mary J. Clark, as executrix, etc., of the decedent Lemuel B. Clark, as executor, etc., of Freeman J. Fithian, deceased." This order was entered July 1, 1887, and all proceedings have been had under it. The order, after reciting the fact that "the above named executrix has filed an amended account to which objections by Harriet J. Fithian, as the widow, sole legatee and executrix of Freeman J. Fithian," ordered that said account and objections "be referred" . . . . . to examine the same and to hear and determine the questions arising upon the settlement thereof . . . . ." The amended account first purports to be of "all the money and other property received by said Lemuel B. Clark, as executor of the estate of said Freeman J. Fithian, from the time of said Clark's appointment as such executor, down to the time of his death so far as I have any knowledge, information or belief concerning the same." Second, the fact that on the 15th of October, 1884, letters testamentary upon the estate of Fithian were issued to Clark, and on the 7th day of July, 1886, letters testamentary upon the estate of Clark were issued to her, Mrs. Clark. Third, that schedule A., annexed, contains a statement of all the property received by Clark as such executor and belonging to the estate of Fithian. This schedule sets out divers items of property, but does not include the money alleged to have been received by Clark after the death of Fithian for fees in three certain lawsuits, amounting, after certain deductions, to about $30,000.

There is annexed to his account a schedule desig-

nated " F," which does not purport to be a statement of any moneys received by Clark as executor of Fithian, but instead, what is alleged to have been received by him as surviving partner of the law firm of Fithian & Clark. This amended account was filed in obedience to an order of my predecessor of December 15, 1886 : . . . . .

" That said Mary J. Clark as such executrix as aforesaid, on or before December 24, 1886, *file, render and settle* (italics mine) an amended account, including all the money and other property received by said Lemuel B. Clark, as executor of the estate of said Freeman J. Fithian, from the time of said Clark's appointment as such executor down to the time of his death . . . . ."
On appeal this order was affirmed.

Mrs. Fithian as " widow and sole legatee and executrix of Freeman J. Fithian, deceased," filed objections to the amended account:

" First—That schedule F. does not contain any statement of the accounts and affairs of the pretended partnership of Fithian & Clark.

" Second—That business conducted in the name of Fithian & Clark for many years was not so conducted for their joint benefit, but they were associated for mutual convenience only, each paying certain portions of the expenses for office and clerk hire, etc., but each attending to his own business, and receiving and retaining his compensation therefor, and in no way accounting to the other therefor. That occasionally said Clark procured the services of said Fithian as counsel in the former's business, for which he paid him. That said Clark never claimed that a partnership existed

between him and said Fithian, but, on the contrary, always disclaimed any partnership. That he represented to her, the objector, that he had received only $10,000 in the New England Iron, and Duryea cases. That said executrix, Mary J. Clark, in order to cover and benefit by the maladministration of his trust by said Clark, now pretends that such a partnership did exist. That said executrix cannot produce any statement of the accounts and affairs of said pretended partnership, because no joint accounts were ever in existence for the above-mentioned reasons. That all the assets mentioned in said account (Schedule F., I assume) belong to the estate of said Fithian exclusively for services rendered by him, said Clark having no claim thereon."

The sense and meaning of this very redundant objection I find to be that the objectant objects to the omission of the accounting party to charge Clark as executor of Fithian with these items, and demands that such account be surcharged therewith. We find here an issue of fact to be tried, involving the question of partnership between Fithian & Clark in respect of these moneys.

Testimony was taken at this issue. On the 21st of February, 1888, on a motion made by the objectant for leave to interpose a further objection, an order was granted by me, duly entered and served as follows, viz.: " Ordered that said Mary J. Clark attend before the referee herein at his office, etc., and be examined under oath touching the receipts and disbursements of her testator, as the executor of Freeman J. Fithian, deceased, and also touching her receipts and disburse-

ments in said Fithian's estate, or touching any other matter relating to her testator or her own administration of said estate or any act done by her or her testator under color of his letters, or after said Fithian's death, and before such letters were issued, or touching any personal property owned or held by the decedent Fithian at the time of his death."

" And it is further ordered that said affidavit of said Harriet J. Fithian be regarded as an additional objection interposed by the objector herein."

The affidavit thus allowed to stand as an objection, for reasons then given by me in a memorandum filed, so far as it seems to me essential to quote, is as follows: . . . . . " That this objector is informed and believes the greater part of the moneys collected by Lemuel B. Clark, as executor of said Fithian's estate, were deposited by him in his bank to his own credit and converted by him and invested in certain securities in the name of his wife, this accounting executrix, and that she now holds or controls the same, or the proceeds thereof; that the objector has sought to prove these facts by said executrix and the bank books of said Clark before the referee; that said referee has ruled that that question can not be gone into before him in the present status of the case, but has adjourned the reference pending an application for further authority from the Surrogate."

The issues of fact sent to the referee are plainly discernible from the extracts I have given of the account and the objections. The respondent most earnestly insists, in a bulky brief, that the accounting party has no notice of any personal claim against her.

Counsel is in error in this regard, for reasons already stated in the first part of this memorandum. The charge is plainly made, although buried under a great weight of words, that Clark was not the partner of Fithian, and that all these disputed items of moneys were collected and received by him as executor and not as surviving partner of Fithian; so also is the charge that Mrs. Clark has come into possession of these moneys, or has them under her control equally plain. These charges or allegations by the petitioner are in answer to the account filed, and with such account create the plain issue sent to the referee to hear and determine.

The question of partnership between Fithian and Clark in respect of the business done for which these moneys were paid to Clark has been found by the referee in the negative. I have frequently decided that, where there is a conflict of evidence, I shall sustain the referee. The latest case is Estate of Lawrence Odell (ante, p. 94). I have examined the testimony and do not find any error in his findings of fact on this question. He finds that these moneys were received by Clark as executor of Fithian. This is equivalent to finding that there was no partnership as to them.

The petitioner, in a brief of equal bulk, as earnestly insists that the referee was justified in finding as a fact that Mrs. Clark has come into possession, or has under control these moneys. He stands on the proposition that as she received the bank books and private papers of Clark, and, after notice, refused to produce them, it is to be presumed that such books, etc., will

show that Clark received the money as executor, and that she as his executrix has received it.

The learned referee has taken the same view and has found that fact, based entirely on such presumption. From this view I am compelled to dissent. The burden of surcharging the account filed was upon the objectant as to the moneys in question. He was bound to satisfy the referee that his allegations were in fact true. It was not enough for him to show that no partnership existed between Fithian and Clark as to these moneys, but he should have gone further and shown by the books and papers of Clark and of Fithian, doubtless in Clark's possession, such entries as were made therein. The cases cited by counsel for petitioner are not applicable.

On the other hand, the accounting party incurred a great risk by refusing to produce all the books, etc., that were called for, because his notion that his client cannot be charged personally in this proceeding, or that she is not sought to be thus charged, is in my view clearly erroneous. Upon his theory of the law, his position is sound, as this would be but an intermediate accounting; but the contrary is the true position; this account is in condition to be judicially settled. Schlegel v. Winckel, 2 *Dem.* 232, is not in point.

I am not able on the evidence to dispose of the question of what or how much money or property received by Clark as executor of Fithian, as found by the referee, has come to the possession of the accounting party, or is under her control. Upon that question further proof must be taken. The parties

should apply for such further order as they may be advised.

I am unable to agree with the learned referee in his finding that the sum of $250 paid to Messrs. Norwood & Coggeshall should be disallowed. A proper voucher for this payment was presented and the burden of impeaching it was thereby cast upon the objectant.

In all respects other than as stated, the referee's report is confirmed.